UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERI TWILLEY,

Petitioner,

Case Number 2:10-CV-11076
Honorable Denise Page Hood

v.

NICK LUDWICK,

Respondent.
_________________________________________/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Teri Twilley's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is currently incarcerated at a Michigan correctional facility where he is serving prison terms of 50-to-100 years, 5-to-20 years, and a consecutive two-year term. The sentences results from his Wayne Circuit Court jury trial conviction of assault with intent to commit murder, MICH. COMP. LAWS 750.83, felon in possession of a firearm, MICH. COMP. LAWS 750.82, and felony-firearm. MICH. COMP. LAWS 750.227b. For the reasons that follow the Court will deny the petition, deny a certificate of appealability, and deny permission to proceed on appeal *in forma pauperis*.

**I. Facts**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Lamont Phillips (a/k/a "Black") testified that, on the morning of July 19,

> 2004, he, James Matthews, and Randi Hill were working on a house on Nevada Street in Detroit. The three men testified that a silver Mercury Marquis pulled up and defendant and Frank Richardson emerged in turn, each pointing a gun at Phillips. Phillips and Hill described defendant's weapon as a .38 caliber handgun. Richardson directed Phillips to the car, where he was accused of robbing one of defendant's family members. Matthews pushed Richardson's gun down. Matthews testified that defendant then told Phillips that "[he] should kill [him] now." Phillips fled, running between several houses, and defendant "chased" him while shooting at him. As Phillips jumped over a fence, he was shot in the back. Phillips continued running until he reached a coworker's house. During the incident, Phillips and Hill saw defendant shoot five or six times. Matthews saw defendant shoot four times, but heard a total of five shots. Defendant and Richardson then left.
>
> On July 24, 2004, defendant was arrested and interviewed by the police. Defendant's statement was read into the record. In the statement, defendant alleged that the victim had robbed someone defendant knew. Defendant admitted to the shooting, but alleged that he shot out of fear that the victim had a gun close by and was going to retrieve it.
>
> At trial, defendant testified on his own behalf. Defendant maintained that, despite his inculpatory statement, he did not commit any crimes, and was not even in the area at the time of the shooting. With regard to his statement, defendant claimed that he had been shot three days before his arrest, and, during the interview, was suffering from "trembling pain," and under the influence of medication and "street drugs." Although defendant admitted placing his initials on the statement, he maintained that the detective "did all the talking," and he "was in so much pain [he] really wasn't paying what seeing or written down no attention."

*People v. Twilley*, 2006 Mich. App. LEXIS 3012 (Mich. Ct. App. Oct. 17, 2006).

Following his conviction and sentence, Petitioner filed an appeal of right in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Defendant's convictions should be reversed because the trial court erred in finding his statements to be voluntary, thus erring in its admission at trial.
>
> II. Defendant is entitled to a new trial where the trial court erred in the admission of evidence, pursuant to Michigan Rules of Evidence 404(b).

The Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court,

which raised the same claims. The Michigan Supreme Court denied the application in a standard order. *People v. Twilley*, 477 Mich. 1055 (2007).

Petitioner returned to the trial court and filed a motion for relief from judgment, which raised the following claims:

> I. The photo array was suspect and unduly suggestive.
>
> II. The prosecutor engaged in misconduct that denied Petitioner a fair trial.
>
> III. The prosecution failed to present sufficient evidence to establish Petitioner's guilt beyond a reasonable doubt with regard to his assault with intent to murder conviction.
>
> IV. Trial counsel was ineffective for failing to obtain data regarding the gunshot residue test and for failing to compel Petitioner's medical records.

The trial court denied Petitioner's motion for relief from judgment on February 7, 2008 because he failed to show good cause under Michigan Court Rule 6.508(D)(3) for failing to raise the new issues during his appeal.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I. Defendant was denied due process of law, and a fair trial when he was convicted on the basis of a highly suggestive identification, which was highly conducive to irreparable misidentification.
>
> II. The prosecutor denied Defendant's right to a fair trial.
>
> III. The prosecution failed to produce legally sufficient evidence o f Defendant's guilt beyond a reasonable doubt, both in terms of identification of Defendant as the perpetrator and/or sufficient evidence on the essential element of assault within intent to murder.
>
> IV. Defendant was denied effective assistance of counsel at trial in the following ways.
>
> V. Defendant is actually innocent of the crimes of assault with intent to commit

murder, felonious assault, possession of a firearm, and possession of a firearm during the commission of a felony.

The application was denied by the Court of Appeals because Petitioner "failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Twilley*, Mich. Ct. App. No. 288535 (March 16, 2009). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Twilley*, 485 Mich. 894 (2009).

Petitioner's application for habeas relief raises the following claims:

I. A series of actions and omissions by trial counsel violated Petitioner's state and federal right to the effective assistance of counsel.

II. Petitioner was denied the effective assistance of appellate counsel and counsel's non-performance establishes good cause for bringing the post-appeal motion for relief from judgment.

III. Petitioner is entitled to a new trial on the basis of newly discovered evidence of actual innocence.

IV. The prosecution failed to produce legally sufficient evidence of Petitioner's guilty beyond a reasonable doubt, both in terms of identification of Petitioner as the perpetrator and/or sufficient evidence on the essential element of assault with intent to murder.

V. Petitioner's conviction should be reversed because the trial court erred in finding Petitioner's statements to be voluntary, thus erring in its admission of evidence pursuant to Michigan Rule of Evidence 404(b).

VI. Petitioner's convictions should be reversed because the trial court erred in finding Petitioner's statements to be voluntary, thus erring it its admission at the trial.

VII. Petitioner was denied due process of law, and a fair trial when he was convicted on the basis of a highly suggestive identification, which was highly conducive to irreparable misidentification.

VIII. The prosecutor denied Petitioner's right to a fair trial.

**II. Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## III. Analysis

Petitioner's claims must be divided into two groups. The first set is comprised of his fifth and sixth habeas claims. These claims were raised in the state courts on direct review, and they were decided against him on the merits. The question with respect to these two claims is whether the state court adjudication was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. The second set of claims is comprised of Petitioner's first, second, third, fourth, seventh, and eighth claims. These claims were raised in Petitioner's state post-conviction proceeding. The state courts found review of these claims to be barred from review by Petitioner's failure to demonstrate good cause for failing to have raised them during direct review. The question with respect to these claims is whether Petitioner can demonstrate cause and prejudice to excuse his state court default.

## A. Claims Raised on Direct Review

### 1. Prior Bad Acts Evidence

Petitioner asserts in his fifth habeas claim that his trial was rendered unfair by the admission of prior bad acts evidence. Respondent argues that the claim amounts to a non-cognizable state law issue that cannot be supported by clearly established Supreme Court law.

At Petitioner's trial, a witness testified how, on July 12, 2004, Petitioner had attempted to shoot him point-blank in the chest. The gun misfired, but eventually Petitioner was able to shoot him in the buttocks and then stole his vehicle. Another witness, testified about how, on July 18, 2004, Petitioner pointed a gun at his head, took twenty dollars and stole his vehicle. The instant crime occurred the next day, on July 19, 2004. The trial court allowed evidence of these prior acts to be admitted because of their close temporal and geographic proximity to the offense, they apparently involved the same .38 caliber weapon, showed an intent to kill, and tended to negate

Petitioner's statement to police that he accidentally shot the victim.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000); *See also Spalla v. Foltz*, 615 F. Supp. 224, 234 (E.D. Mich. 1985).

Petitioner's claim that he was denied a fair trial by the admission of what he describes as irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); rev'd on other grds 563 F.3d 222 (6th Cir. 2009).

To the extent that petitioner argues that the state court violated Michigan Rule of Evidence 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled

to habeas relief on his first claim.

**2. Involuntary Confession**

Petitioner asserts in his sixth habeas claim that his statement to the police should have been suppressed because he was coerced into waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and his statement was involuntarily made. Respondent argues that the claim does not provide a basis for granting habeas relief because it was reasonably adjudicated by the state courts.

The trial court held an evidentiary hearing on Petitioner's claim. The only person to testify at the suppression hearing was the interviewing officer. Petitioner elected not to take the stand. The officer testified that Petitioner was arrested at around 6:00 a..m., and the interview occurred at about 1:30 p.m. Petitioner was in his 40's, had a 10th grade education, and had prior experience with the criminal justice system. Prior to the interview with police, Petitioner was asked whether he was under the influence of alcohol or drugs, and Petitioner answered that he had taken Tylenol-3. Petitioner was then informed of his *Miranda* rights. Petitioner stated that he had no questions about his rights and initialed the waiver form. Petitioner was provided with juice and aspirin during the interview. The interview lasted for approximately 45 minutes.

The trial court found that Petitioner voluntarily waived his rights and made a statement. The court noted that Petitioner did not ask for a break, answered all questions that were asked of him, and he was not denied any food or water. The court found that there were no promises or threats made to Petitioner. The court noted that Petitioner had taken a Tylenol-3, but Petitioner had been given an opportunity to read and correct anything in his statement and declined to do so. The Michigan Court of Appeals found that the trial court did not err denying Petitioner's motion to suppress his statement.

In *Miranda*, the Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements . 384 U.S. at 444. A defendant's waiver of his *Miranda* rights must be found, under the totality of the circumstances, to be voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police coercion (a "crucial element"), (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition, and (8) whether the suspect was advised of *Miranda* rights. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors should be closely scrutinized, *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961), but without coercive police activity, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a statement was involuntary rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

The state adjudication of Petitioner's claim was reasonable. Petitioner did not provide any evidence at all that the police coerced him into waiving his rights and making a statement. Indeed, the only person to testify at the hearing was the interviewing police officer, who of course denied that he coerced Petitioner to cooperate. The length of interrogation was brief, lasting less than an hour. Petitioner was a literate adult with prior experience with the criminal justice system. Although the evidence showed that Petitioner had taken a Tylenol-3 because of his gunshot injury, there was no evidence presented at the hearing to show that the medication undermined his ability to voluntarily cooperate with the interviewing officer. Lastly, Petitioner was read his *Miranda* rights, and he agreed to waive them. Given the totality of the circumstances, the state court decision that Petitioner voluntarily waived his rights and made a statement to police did not involve an unreasonable application of clearly established Supreme Court law. Habeas relief is therefore barred by §2254(d).

**B. Claims Raised on State Collateral Review**

Petitioner's remaining claims - his first, second, third, fourth, seventh, and eighth - were presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent asserts that review of these claims is barred because the state court decision rests on an independent and adequate state procedural ground.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is

unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to

subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Wayne Circuit Court judge rejected petitioner's motion for relief from judgment, finding that "Defendant has not shown 'good cause' under M.C.R. 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal. Further he has not proven actual prejudice." *People v. Twilley*, No. 04-07893-01, *4 (Wayne Circuit Court, February 7, 2008). Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial court may have also discussed the merits of petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's remaining claims are therefore procedurally defaulted.

With respect to these claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel

was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined

as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appeal brief which raised two of the claims Petitioner still maintains entitle him to relief. Petitioner has not shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable.

As the Wayne Circuit Court articulated in rejecting petitioner's post-conviction claims, none of the claims raised by Petitioner in his post-conviction motion have merit, none were "dead bang winners." Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Petitioner has failed to show cause to excuse his default. Accordingly, it is unnecessary to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence —

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner asserts in his third claim that he has new evidence of his innocence. He has attached an affidavit from Julian Brooks stating that he was paid $2,500 by the investigating police officer and another $1,000 by a resident of the neighborhood where the crime occurred to testify against Petitioner at trial. Brooks also claims that other prosecution witnesses were likewise paid by the officer to testify against Petitioner. It should be noted that Brooks is now serving a mandatory life sentence for his conviction of first-degree murder. His affidavit does not suffice to establish Petitioner's actual innocence. Recanting affidavits, like the one offered here which seeks to exonerate Petitioner, are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). When the affidavit conflicts with the witness's trial testimony, it is viewed with extreme suspicion. *Lardie v. Birkett*, 2008 U.S. Dist. LEXIS 11791 ( E.D. Mich. Feb. 19, 2008); *See also McCray v. Vasbinder,* 499 F.3d 568, 574 (6th Cir. 2007). The skepticism is further heightened in this case because the former prosecution witness now finds himself serving time with Petitioner in the Michigan Department of Corrections for the rest of his life. Petitioner has not presented any new *reliable* evidence that he is innocent of these crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). Petitioner has failed to show that his post-conviction claims have any merit. Petitioner is not entitled to habeas

relief on his remaining claims. The Court denies the petition for writ of habeas corpus.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. Conclusion

For the foregoing reasons,

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is DENIED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: February 29, 2012

I hereby certify that a copy of the foregoing document was served upon Teri Twilley, 180257, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048 and counsel of record on February 29, 2012, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager